[No. 28002. Department Two. September 3, 1940.]

THE STATE OF WASHINGTON, *Respondent,* v. C. F. HURD, *Appellant.*[1]

[1] Reported in 105 P. (2d) 59.

*Robert B. Abel,* for appellant.

*Thor C. Tollefson* and *Hugo Metzler, Jr.,* for respondent.

STEINERT, J.—Upon a trial before a jury, defendant was convicted of the crime of operating a motor ve-

hicle "while under the influence of, or affected by, intoxicating liquor," and from the judgment of conviction he now appeals.

The facts material to the questions raised upon the appeal are as follows: On January 3, 1939, an information was filed, charging appellant with the crime of operating a motor vehicle *"while under the influence* of intoxicating liquor." Appellant was arraigned on that charge and pleaded "not guilty." After a mistrial in November, 1939, the trial court, on February 10, 1940, granted respondent's motion (which had been served on appellant's counsel on February 7) for the amendment of the information to read, in part, "while under the influence of *or affected by* intoxicating liquor." The only change effected by the amendment was the addition of the words "or affected by," following the phrase "under the influence of." The amended information was filed on February 10, 1940, but, apparently through some oversight, it was not verified. The purpose of the amendment, according to a statement made at that time by the prosecuting attorney, was to have the information conform to the language of the pertinent statute, Rem. Rev. Stat., Vol. 7A, § 6360-119 [P. C. § 2696-877]. Appellant was not arraigned, however, on the amended charge, nor did he plead thereto.

February 10, 1940, the day on which the motion for amendment of the information was granted, fell on a Saturday. The following Monday, February 12, was a legal holiday. On Tuesday, February 13, the case was called for trial.

In his opening statement to the jury, the prosecuting attorney read the unverified, amended information. At the conclusion of the opening statement, appellant's counsel objected to "further proceedings," and to

"  . . . the introduction of any testimony herein upon the ground and for the reason that the defendant [appellant] C. F. Hurd has not been arraigned to the amended information."

No objection, however, was assigned upon the ground that the amended information had not been verified. The record does not show whether or not appellant knew at that time that the information, as amended, was irregular in that particular respect.

In answer to counsel's objection, the trial court suggested that appellant be then arraigned upon the amended information, and that he make his plea at that time. The prosecuting attorney expressed his willingness to adopt the court's suggestion, but at the same time stated that, in his opinion, that step was unnecessary because the amendment was only as to form. Appellant's counsel, however, took the position that the amendment was one of substance and concerned a vital issue, and he therefore demanded that, if the suggestion were followed, appellant be accorded the right granted by Rem. Rev. Stat., § 2098 [P. C. § 9152], to have one day after arraignment in which to make his plea. The trial court then suggested, as a safer course, that the amendment be stricken, and that the trial proceed on the original information. The prosecuting attorney expressed his willingness to proceed in that manner also, but iterated his contention that the amendment was merely one of form and not of substance. Appellant's counsel, however, again objected, upon the ground that such procedure would be irregular and would be prejudicial to his client. The trial court thereupon laconically announced that it would stand upon the amended information, and accordingly overruled appellant's objection to further proceedings. The trial was then re-

.sumed, without further arraignment of appellant, and resulted in his conviction.

Following the recording of the verdict, appellant .moved for arrest of judgment upon the ground of his original objection that he had never been arraigned ·upon the amended information, and upon the further ground, then asserted for the first time, that the amended information had never been verified.

Upon the appeal, two questions are presented for decision: (1) whether or not, under the facts, it ·was necessary that appellant be arraigned upon the amended information, and (2) whether or not the :failure to verify the amended information constituted a fatal defect so far as all subsequent proceedings were concerned.

It is well settled that a substantial amendment of an information requires that the accused be arraigned on the amended information. *State v. Van Cleve*, 5 Wash. 642, 32 Pac. 461; *State v. Hamshaw*, 61 Wash. 390, 112 Pac. 379; *Bohannan v. State*, 11 Okla. ·Crim. 69, 142 Pac. 1092; *People v. Clement*, 4 Cal. ˙Unrep. 493, 35 Pac. 1022; Annotation, 58 L. Ed. 772; ˙14 Am. Jur. 941, § 253.

Where, however, the amendment is merely one of ·form, and not of substance, no rearraignment is nec- ·essary. *White v. People*, 79 Colo. 261, 245 Pac. 349; *State v. Bugg*, 66 Kan. 668, 72 Pac. 236; *People v. O'Hara*, 278 Mich. 281, 270 N. W. 298; *State v. Speyer*, ˙194 Mo. 459, 91 S. W. 1075; *Potter v. State*, 47 Okla. Crim. 254; 288 Pac. 362; *Hammons v. State*, 47 Okla. ˑCrim. 297, 287 Pac. 1076; Annotation, 58 L. Ed. 772; 16 ˑC. J. 389, § 713.

Whether or not appellant was entitled to rearraign- ¯ment thus depends upon whether the amendment was ˑone of form or one of substance. Appellant contends

that the amendment was one of substance for two reasons.

■ The first reason assigned is that the original information was based on Laws of 1927, chapter 309, p. 811, § 51 (Rem. Rev. Stat., § 6362-51 [P. C. § 196-51]), while the amended information was based on Laws of 1937, chapter 189, p. 910, § 119 (Rem. Rev. Stat., Vol. 7A, § 6360-119), which provides for an increased penalty. The crime with which appellant was charged in this case was alleged to have been committed on January 2, 1939, and the original information, it will be recalled, was filed on January 3, 1939, which was after the passage of the 1937 statute.

A reading of these two statutes makes it too clear to require discussion that the 1937 statute superseded the 1927 statute. Hence, the original information and the amended information did not have the effect of charging appellant with violation of separate and distinct statutes. In each information, he was charged with violation of the only statute in force since 1937 relative to operation of a motor vehicle while under the influence of intoxicating liquor. The amendment involved no change of statutory basis.

■ As a second reason for his contention that the amendment was one of substance, appellant asserts that the phrase "affected by the use of intoxicating liquor" has a far broader meaning than the phrase "under the influence of intoxicating liquor." His argument is that one may be *affected* by intoxicating liquor and yet not be *under the influence* thereof; that although appellant may have been affected to a degree by the "two or three highballs" which he admitted having taken before dinner on the day in question, it does not follow that he was under the influence of liquor later in the evening, at the time of the occurrence of the accident which led to the filing of the

charge here involved. The argument is plausible, but as applied to the statute under consideration we do not think that it is legally sound.

Webster's New International Dictionary (2d ed.), 1934, defines the verb "influence" as follows:

"To exert influence upon; specif.: a. To alter or move in respect to character, conduct, or the like; to sway; persuade; *affect;* as, to influence a person for good; b. To *affect;* to have an *effect* on the condition or development of; to modify or determine; as, temperature influences flora and fauna." (Italics substituted.)

The same authority gives the following definition of the verb "affect":

"To lay hold of or attack (as a disease does); to act, or produce an effect, upon; to impress or *influence* (the mind or feelings); to touch." (Italics ours.)

Listed as synonyms of "affect", in the latter dictionary, are *"influence,* operate, act on, concern; move, melt, soften." (Italics ours.)

Funk & Wagnalls New Standard Dictionary (1929) defines the verb "influence" in much the same terms, as follows:

"1. To *affect,* modify, or act upon physically, especially in some gentle, subtle, or gradual way; as, the brain influences the mind. 2. To exert or maintain a mental or moral power upon or over; affect or sway by motives, as the feelings or conduct . . ." (Italics substituted.)

and the verb "affect" as:

"To have an effect upon; act upon; lay hold of; impress; *influence;* change; as, worry affects the mind; opiates affect the brain. 2. To act upon the emotions or sensibilities of; touch; move; as, the audience was deeply affected. 3. To lay hold of; act upon contagiously, as a part of the body; attack . . ." (Italics substituted.)

The two words, "influence" and "affect", thus appear to be interchangeable and synonymous.

Legal authorities, so far as we have been able to find, also agree that the two words in question are used interchangeably.

Bouvier's Law Dictionary defines "affect" in the following language:

"To lay hold of, to act upon, impress or *influence*. It is often used in the sense of acting injuriously upon persons and things." (Italics ours.)

Ballentine's Law Dictionary says:

"The word . . . sometimes means to act upon; to *influence*, but it is more frequently used in the sense of weakening, debilitating; acting injuriously upon persons and things." (Italics ours.)

Black's Law Dictionary (3d ed., 1933), gives the following definition:

"To act upon; *influence*; change; enlarge or abridge; often used in the sense of acting injuriously upon persons and things." (Italics ours.)

The phrase "under the influence of intoxicating liquor," as used in the amended information, has been defined as any influence which lessens in any appreciable degree the ability of the accused to handle his automobile. *Smith v. Baker,* 14 Cal. App. (2d) 10, 57 P. (2d) 960; *Luellen v. State,* 64 Okla. Crim. 382, 81 P. (2d) 323. In many other jurisdictions, the phrase has been held to cover any abnormal mental or physical condition, and the lessening in the *slightest* or any degree of the accused's ability to operate a vehicle. *Steffani v. State,* 45 Ariz. 210, 42 P. (2d) 615; *Weston v. State,* 49 Ariz. 183, 65 P. (2d) 652; *State v. Duguid,* 50 Ariz. 276, 72 P. (2d) 435; *State v. Sisneros,* 42 N. M. 500, 82 P. (2d) 274; *State v. Harris,* 213 N. C. 648, 197 S. E. 142; *Commonwealth v. Buoy,* 128 Pa. Super. Ct.

264, 193 Atl. 144; *Commonwealth v. Long,* 131 Pa. Super. Ct. 28, 198 Atl. 474.

We are therefore of the opinion, and now hold, that the phrases "under the influence of" and "affected by," as employed in the statute, have the same significance, import, and breadth of meaning.

█ There is another reason peculiar to this case why the contention which is now under consideration cannot be sustained. The record shows clearly that the vital issue in the case was not whether appellant had, or had not, consumed any particular amount of intoxicating liquor, but whether or not, at the time of the accident which followed he was under the influence of the amount of liquor which he had admittedly imbibed during the late afternoon. The evidence upon that issue, coming from a large group of witnesses, was in direct conflict. The court instructed the jury that

"The phrase 'while under the influence of, or affected by the use of, intoxicating liquor,' so far as this case is concerned means an *abnormal mental or physical condition due to the influence* of alcoholic liquors, a visible impairment of the judgment or a derangement, or impairment of mental or physical functions or energies arising therefrom," (Italics ours.)

and, further, that

"The question of whether or not the driver of an automobile is under the influence of or affected by intoxicating liquor is one solely for the jury to determine from the evidence. *The law recognizes that a person may have drunk liquor and yet not be under the influence of it. It is not enough to prove merely that a driver had taken liquor."* (Italics ours.)

No error is assigned upon those instructions, of course, and they therefore constitute the law of the case.

It is apparent that, even if we accept appellant's contention regarding the variance in meaning of the two phrases in question, the jury, in order to convict appellant, was required to find that he was *"under the influence* of intoxicating liquor." Appellant has therefore not been prejudiced by the amendment.

The second question presented for decision relates, as already stated, to the effect of the failure to verify the amended information. It will be recalled that the objection on that ground was not interposed until after the verdict had been recorded.

■ It is well established in this jurisdiction that objection to the absence of the verification of an information cannot be made for the first time on appeal. *Hammond v. State,* 3 Wash. 171, 28 Pac. 334; *State v. Stone,* 66 Wash. 625, 120 Pac. 76; *State v. Taylor,* 196 Wash. 37, 81 P. (2d) 853.

Those cases are also authority for the proposition that verification may be waived by pleading to the merits, or by going to trial without making any objection to the irregularity in the information.

Appellant, however, contends that he is not governed by those rules because the question of lack of verification was specifically raised in the superior court by his motion in arrest of judgment, and further, because he did not plead to the amended information.

We have heretofore observed that the amendment was one of form only and did not change the substance of the original, verified information, to which appellant pleaded "not guilty," and upon which, in effect, he went to trial and was convicted. That circumstance alone should be sufficient to dispose of appellant's contention.

■ Aside from that, however, while the cases last above cited did not present the exact situation that is before us now, we are of the opinion that the reason-

318

ing underlying those decisions is equally applicable to, and controlling of, this case.

The verification is not a substantial part of the complaint or information, and the only purpose of such appended affidavit is to insure good faith in instituting the proceeding. The cases just referred to so hold.

There can be no question in the case at bar as to the good faith of the prosecution. The honest intention of the state was established by the evidence and was confirmed by the verdict. When a valid verdict of "guilty" has been returned, the meritorious and non-vexatious character of the charge has been established far beyond the power of a mere verification to do so.

Where, as in this case, no question of prejudice to any fundamental right of the accused is involved, objection to the verification, or lack of verification, must be made promptly and specifically in order to avoid the useless expense, loss of time, and inconvenience of witnesses inherent in abortive trials. If the cause be tried upon an original information, the accused has the opportunity of determining before trial whether or not the information has been verified. If the information be amended at the commencement, or during the course, of the trial, the accused likewise has the opportunity then to determine the same fact. In either event, failure to object promptly and specifically constitutes a waiver of the defect. And that result follows, whether the objection was purposely withheld, or whether the delay was due to a failure to discover the defect. Either situation involves a failure to act promptly and specifically, and the irregularity will therefore be considered to have been waived.

The judgment is affirmed.

BLAKE, C. J., BEALS, JEFFERS, and DRIVER, JJ., concur.